```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION
```

DAVID'S AUTO SHREDDING, INC.,    )
                                 )
    Plaintiff,                   )
                                 )
vs.                              )    CIVIL ACTION 08-00410-KD-B
                                 )
THE SHREDDER COMPANY, LLC,       )
*et al.*,                        )
                                 )
    Defendants.                  )

## REPORT AND RECOMMENDATION

This case is before the Court on Defendant The Shredder Company, LLC's Motion to Dismiss, or in the alternative, Motion to Transfer Venue (Doc. 11) and Defendant Alton Scott Newell, II's Motion to Dismiss, or in the alternative, Motion to Transfer Venue (Doc. 13). The undersigned has carefully considered the arguments submitted in support of and in opposition to the motions. For the reasons set forth herein, the undersigned RECOMMENDS that The Shredder Company, LLC's motion be granted, in part, and denied in part, and that Alton Scott Newell's motion be granted, and denied in part.

I.   **Factual and Procedural Background**

David Hickman is president of David's Auto Shredding, Inc. (hereinafter "David's Shredding"), which is located in Mobile, Alabama. (Doc. 21, Ex. A). In 2006, Hickman contacted Mr. Scott Newell, president of The Shredder Company, LLC (hereinafter "TSC") about purchasing a shredder for his new shredding company in Mobile. (Id.)   TSC was incorporated in the state of Texas and has its

principal place of business in Texas. (Doc. 24, Ex. A).  Defendant Newell, who is a resident of Texas, traveled to Biloxi, Mississippi in May 2006 to meet with Hickman and discuss the purchase of a shredder for David's Shredding[1]. (Id.)  During the course of their visit, Newell and Hickman executed a sales contract on behalf of their respective companies. (Id.)  The contract provided for the purchase of a 60 SAS Shredder with feeding system.  The contract also contained a paragraph entitled "Law applicable to Contract." (Doc. 1, Ex. A).  The paragraph reads as follows:

> This agreement is deemed to have been made in El Paso, County, Texas regardless of the order in which the signatures of the parties hereto are affixed on the place of their signatures and all disputes, causes of action or litigation shall be filed and adjudicated in El Paso County, Texas, and further the rights and liabilities of the parties and the interpretations of this contract shall be made in accordance with the laws of the state Texas.

(Doc. 1, Ex. A).

Within a week of executing the first contract,  David's Shredding entered into a second contract with TSC on May 19, 2006, for the purchase of additional equipment necessary for operation of the shredder. (Doc. 1, Ex. B). The second contract was signed by Newell and Hickman on behalf of their respective companies and includes the identical choice of law paragraph that is contained in the parties' first contract. (Id.; Doc. 24, Ex. A).

Plaintiff, David's Shredding, filed the instant action on July

---

[1] In addition to David's Shredding, Hickman also operates David's Motor and Scrap, Inc., a scrap yard located in Biloxi, Mississippi. (Doc. 20, Ex. A).

15, 2008, against TSC and Newell. (Doc. 1).  Plaintiff alleges that Newell and TSC misrepresented or suppressed the status and existence of the infeed conveyor; that TSC did not deliver the infeed conveyor and other equipment as required under the contract, that TSC converted money paid as consideration for those items; that TSC and Newell have been unjustly enriched by the payment of such consideration; and that Plaintiff is entitled to an accounting of all payments it made in consideration for the items purchased under the contract. (Id.)

TSC filed a motion seeking the dismissal of Plaintiff's claims, or an order transferring venue of this case to the district court in El Paso, Texas on the ground that the forum selection clause contained in the parties' contracts mandate that disputes arising under the contract be brought in El Paso, Texas.  Defendant Newell also filed a motion to dismiss or transfer venue.  He argues that this Court does not have personal jurisdiction over him because he does not reside in the state, and has not taken any actions to avail himself of Alabama courts.  Newell further argues that to exercise jurisdiction over him under the circumstances of this case would offend notions of fair play and substantial justice, and that jurisdiction over TSC is not sufficient to confer personal jurisdiction over him.  Additionally, Newell argues that he should be permitted to avail himself of the forum selection clause given his status as president of TSC.

**II.   Discussion**

   **A. TSC's Motion to Dismiss**

Forum selection clauses are enforceable in federal courts. P & S Business Machines, Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003). By enforcing a forum selection clause, the court is not attempting to limit the plaintiff's usual right to choose its forum but is enforcing the forum that the plaintiff already chose. Id. Where a valid choice of forum clause exists, there is "no reason why a court should accord deference to the forum in which plaintiff filed its action. Such deference ... would only encourage parties to violate their contractual obligations, the integrity of which are vital to our judicial system." In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989).

While Federal Rule of Civil Procedure 12(b)(3) authorizes the outright dismissal of an action for improper venue, courts typically enforce forum selection clauses by transferring cases to the appropriate forum under 28 U.S.C. § 1404(a) except when the applicable forum selection clause requires litigation in a state court system or in a foreign country. See Lipcon v. Underwriters at Lloyd's, 148 F.3d 1285, 1290 n.3 (11th Cir. 1998). Because there is another federal forum to which the instant case can be transferred under the parties' contract, the subject forum selection clause will be considered in the context of a motion to transfer pursuant to Section 1404(a). Thus, it is recommended that TSC's motion to dismiss, based on the forum selection clause, be denied.

In considering TSC's request to transfer, the first issue is whether the forum selection clause applies to Plaintiff's claims.

Plaintiff argues that the clause does not apply to this case because the clause is limited solely to "disputes, causes of action or litigation involving the contract itself" whereas Plaintiff's claims relate to fraudulent misrepresentations by Defendants in an effort to convert money Plaintiff paid for specific equipment, and to extort additional money from Plaintiff.  TSC argues that the clause covers "all disputes, cause of action and litigation" and is not limited to claims involving the interpretation or enforcement of the contract.  The Eleventh Circuit has given broad interpretation to forum selection clauses.  See, e.g. Stewart Org., Inc. v. Ricoh Corp., 810 F. 2d 1066, 1070 (11th Cir. 1987)(en banc), aff'd and remanded on other grounds, 487 U.S. 22, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988) (holding that the clause, which required parties to litigate "any case or controversy arising under or in connection with" their contract in New York encompassed both contract and tort claims); Digital Envoy, Inc. v. Google, Inc., 319 F. Supp. 2d 1377, 1380 (N.D. Ga. 2004)(forum selection clause not limited to claims that are dependent upon the agreement, but it encompasses "any lawsuit regarding th[is] [a]greement"); McNair v. Monsanto Co., 279 F. Supp. 2d 1290, 1307-08 (M.D. Ga. 2003)("all disputes arising under this agreement" sufficiently broad to include tort claims and breach of implied warranty claims).  Stephens v. Entre Computer Ctrs., Inc., 696 F. Supp. 636, 638 (N.D. Ga. 1998) (clause in parties' agreement that referred to "any action" and which did not explicitly limit the actions to ones arising "under or in connection with the contract" was broad enough to encompass the plaintiff's fraud claims).

As noted supra, the forum selection clause in this case encompasses "all disputes, causes of action or litigation." This language is broad and is not merely limited to contract actions, as asserted by Plaintiff. It encompasses all claims asserted by Plaintiff pertaining to its relationship with Defendants. Accordingly, Plaintiff's claims that Defendants made fraudulent misrepresentations concerning the status of equipment and converted funds paid for such equipment clearly arose in connection with their business transaction and is encompassed within the parties' broad forum selection clause.

Once it is determined that the plaintiff's claim is encompassed within the forum selection clause, the court must determine whether the clause is enforceable. Forum selection clauses that are "freely and fairly negotiated by experienced business professionals" are enforceable. In re Richoh Corp., 870 F. 2d at 573-74. To assert unfair negotiation, parties must show a "disparity in bargaining power such that it would be unjust or unreasonable to enforce the forum selection clause." McNair v. Monsanto Co., 279 F. Supp. 2d 1290, 1302 (M.D. Ga. 2003). Such disparity generally does not exist where the parties are free to refuse to enter into the agreement. Id. In addition, proof of "fraud, duress, misrepresentation, or other misconduct" in negotiation can bar a forum selection clause's enforcement. In re Richoh Corp., 870 F. 2d at 573-74. Also, in limited circumstances, forum selection clauses can be held unenforceable "if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." The Bremen v. Zapata Off-Shore

Co., 407 U.S. 1, 15, 92 S. Ct. 1907, 1916, 32 L. Ed. 2d 513 (1972).

While Plaintiff, in the case at hand, argues that Defendants engaged in fraud and misrepresented the status of the equipment that Plaintiff had purchased, Plaintiff has not alleged, let alone pointed to any facts, which suggest that Defendants engaged in fraud in procuring the forum selection clause. Plaintiff has also failed to point to any disparity in bargaining or overreaching. While Plaintiff argues that its president is not experienced in executing large contracts, David's Shredding's President, David Hickman, acknowledges that he approached TSC about purchasing a shredder and shredder equipment, that he serves as president of two companies, one in Alabama, and one in Mississippi, and that TSC was one of at least four entities that Plaintiff was free to contract with. (Doc. 21, Ex. A). Moreover, Plaintiff has not established that enforcement of the clause would contravene a strong public policy of this state. Accordingly, the undersigned finds that the contract is enforceable.

Finally, under § 1404(a), the court should consider "'the convenience of parties and witnesses'" and the "'the interest of justice,'" with a choice of forum clause "a significant factor that figures centrally in the district court's calculus." " Stewart Org., Inc. v. Ricoh, Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 2243, 101 L. Ed. 2d 22 (1988). "Thus, while other factors might 'conceivably' militate against a transfer ... the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors." In re Ricoh, 870 F.2d at 573. Applying those factors to this case, the undersigned finds that Plaintiff has not established that the

contractual forum - - Texas is sufficiently inconvenient to justify retention of this dispute. Plaintiff and its respective witnesses are located in Alabama, and Defendants and their respective witnesses are located in El Paso, Texas. While Plaintiff asserts that it will incur substantial expense if this case is transferred to Texas, it stands to reason that Defendants will likewise incur additional expense if they are forced to travel to Alabama to defend this action. Accordingly, based upon the record before court, the undersigned finds that no exceptional circumstances have been presented which warrant refusing to enforce the forum selection provision agreed to by the parties. The undersigned therefore recommends that Defendant TSC's Motion to Transfer be granted.

**B. Newell's Motion to Dismiss**

"The plaintiff has the burden of establishing a prima facie case of personal jurisdiction over a nonresident defendant." Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1268 (11th Cir. 2002). "Plaintiff's burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for exercise of such jurisdiction." Future Technology Today, Inc., v. OSF Healthcare Systems, Inc., 218 F.3d 1247, 1249 (11th Cir. 2000). "A federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sit...." Meier, 288 F.3d at 1269.

In Madara v. Hall, 916 F.2d 1510 (11th Cir. 1990), the Court of Appeals for the Eleventh Circuit set out the principles which guide this Court's review of Newell's Motion to Dismiss based on lack of personal jurisdiction:

> When a district court does not conduct a discretionary evidentiary
> hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant ... A prima facie case is established if the plaintiff presents enough  evidence to withstand a motion for directed verdict ... The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits ... Finally where the plaintiff's complaint and the defendant's affidavit conflict, the district court must construe all reasonable inferences in favor of the plaintiff.

916 F.2d at 1514 (citations omitted).

In a diversity action, the court "undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." United Techs. Corp. V. Mazer,___ F.3d. ___, 2009 U.S. App. LEXIS 2296, *26 (11th Cir. Feb. 5, 2009), 2009 WL 263329, *8. Because Alabama's long-arm provision, Rule 4.2(a) of the Alabama Rules of Civil Procedure, is coextensive with due process requirements, see Ala. Waterproofing Co. v. Hanby, 431 So. 2d 141, 145 (Ala. 1983), the court need only consider whether the exercise of jurisdiction satisfies the requirements of due process, Oliver v. Merritt Dredging Co., 979 F.2d 827, 830 (llth Cir. 1992). Due process requires: (1) that the defendant have "certain minimum contacts" with the forum state and (2) if such minimum contacts exist, that the exercise of jurisdiction over the defendant "'does not offend traditional notions of fair play and substantial justice.'" Burnham v. Superior

9

Court of Cal., 495 U.S. 604, 618, 110 S. Ct. 2105, 109 L. Ed. 2d 631 (1990) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). "This two-part test embodies the controlling due process principle that a defendant must have 'fair warning' that a particular activity may subject it to the jurisdiction of a foreign sovereign." Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1545 (11th Cir. 1993).

In support of his argument that Alabama lacks personal jurisdiction over him, Newell asserts that he is a resident of Texas, that he does not own any property in Alabama, that Plaintiff approached TSC in Texas about David's Shredding interest in purchasing a shredder, that he never visited Alabama in connection with his dealings with Plaintiff, and that all negotiations leading up to the contracts between the parties took place outside of Alabama.  In response, Plaintiff asserts that Defendant Newell should be subject to personal jurisdiction in Alabama because he traveled to Biloxi, Mississippi to avail himself of profit from the shredder equipment which was being sold for use in Alabama, that Newell repeatedly called and emailed Plaintiff regarding the equipment and for additional funds, that Newell's conduct was expressly aimed at Plaintiff in Alabama, that he knew the equipment was to be used in Alabama, and that he knew his fraudulent acts would have a devastating impact on Plaintiff.  Based upon the parties' submissions, it is undisputed that Defendant Newell knew that Plaintiff was an Alabama corporation, knew that the equipment was to be utilized in Alabama, and knew that the alleged harm would be suffered by Plaintiff in the state of Alabama, where the

equipment was to be delivered and utilized.

In Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984), the United States Supreme Court held that California could exercise personal jurisdiction over authors of a libelous article, published in the National Enquirer, on the basis of specific contacts with the state because they allegedly knew that their article would impact the plaintiff in California, where she resided. The so-called 'effects test' adopted by the Court provides that intentional and allegedly tortious actions which the actor knows will be felt in another state are sufficient to justify the exercise of personal jurisdiction in an action arising out of those acts. Id. at 789-90. In upholding the exercise of personal jurisdiction over the non-residents, the Supreme Court stressed that

> [The] petitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at [the forum] ... And they knew that the brunt of that injury would be felt by respondent in the [forum] ... An individual injured in [the forum] need not go to [the nonresident's state] to seek redress from persons who, though remaining in [their state], knowingly cause the injury in [the forum].

Calder, 465 U.S. at 788.

In Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc., 207 F.3d 1351, the Court of Appeals for the Eleventh Circuit relied on the Calder decision in addressing the issue of whether a nonresident insurance broker could be subjected to personal jurisdiction in Alabama arising from his sale of boat insurance to an Alabama resident. The Michigan insurance broker and his agency argued that they should not be subject to jurisdiction in Alabama because they did not have any direct contact with the plaintiff in Alabama, and

11

that all of their dealings with the plaintiff were through a Florida insurance broker.  The trial court denied the defendants' motion, and on appeal, the Eleventh Circuit held that assuming the allegations of the complaint to be true, the Michigan insurance broker and agency should have anticipated being haled into an Alabama court.

The Court stressed that while it is true that these defendants had no direct contact whatsoever with Alabama in connection with the events, the following facts, which were presumed true, were sufficient to establish that the defendants had purposefully availed themselves of the opportunity to do business with an Alabama resident in Alabama: the defendants chose to do business with an Alabama resident, they expected to receive a benefit from that business, they knew that the insurance they were procuring was for a boat owned by an Alabama resident which was located in Alabama and which would necessarily traverse Alabama waters; they undertook to and did procure insurance for the boat; they authorized a Florida broker to issue a binder for insurance that was sent to the plaintiff in Alabama; and they received a commission from the insurance premium.  The court concluded that "[s]ince plaintiff's claims arises out of defendants' forum-related activities - - the procurement of his insurance policy - - jurisdiction over them is ... appropriate."  Id. at 1357.

Still another case that is instructive on the issue before the Court is Shrout v. Thorsen, 470 So. 2d 1222 (Ala. 1985).  In Shrout, the plaintiff, an Alabama resident sued nonresident defendants for fraud related to Plaintiff's efforts to invest in a warehouse and

12

condominium development in Texas. The plaintiff alleged that he met with the nonresident attorney and others in Atlanta, that the nonresident attorney represented to him that he would arrange the financing for the project if the plaintiff wired him $25,000 as good faith money and paid him $500 for representing the plaintiff in the negotiations. The plaintiff sued the nonresident attorney and others for fraud after they failed to deliver the promised financing. Following a verdict in favor of the plaintiff, the nonresident attorney sued alleging that he did not have sufficient contacts with Alabama to warrant the exercise of personal jurisdiction over him. In rejecting the defendant's appeal, the Alabama Supreme Court noted that the nonresident attorney had played an 'integral' part in the defendants' attempt to defraud the plaintiff, that he had participated in several telephone calls in which fraudulent information was provided to Plaintiff, and that he accepted the plaintiff's money knowing that no loan was forthcoming.  Based on these facts, the court concluded that "[i]t is reasonable to assume that [the nonresident attorney], anticipated that [the plaintiff] would file suit in Alabama, attempted to keep his contacts with the state minimal, in order that later he could assert his lack of contacts as a bar to the court's acquiring *in personam* jurisdiction over him.  We cannot allow a culpable defendant to manipulate our decisions on *in personam* due process to effect a shield against his improper conduct." Id. at 1225.

In the case at hand, Plaintiff's evidence establishes that Newell knew that TSC was based in Alabama, that Newell induced TSC's president to send a number of sizable payments to TSC for the

13

purchase of the infeed and related equipment, which Newell knew was to be used at Plaintiff's facility in Alabama, that Newell made repeated misrepresentations regarding the status of the equipment, that Newell was involved in the conversion of the funds to TSC's benefit, and that Newell knew his actions would have a devastating impact on Plaintiff in Alabama.  The undersigned finds that if proved at trial, these facts are sufficient to establish that Newell purposefully availed himself of the opportunity to do business with an Alabama resident in Alabama.

Once it is established that defendant has at least minimum contacts with a forum, the burden is on the defendant to show that the imposition of jurisdiction in the forum is unreasonable. Several factors are relevant to this showing: (1) the defendant's burden; (2) the forum state's interest; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies. Madara, 916 F.2d at 1517; Ruiz de Molina, 207 F.3d at 1358.  While it is clear that Alabama has a substantial interest in providing an effective means of recovery for a resident who has been damaged in these circumstances, the undersigned has previously determined that the forum selection clause contained in Plaintiff's contracts with TSC mandate that this action be transferred to the United States District Court in El Paso.  Newell argues that he should be allowed to take advantage of the forum selection clause because, as

14

president of TSC, he is closely related to TSC and to its contractual relationship with Plaintiff, and Plaintiff's claims against him arise out of same facts involving TSC.

The Eleventh Circuit Court of Appeals has joined with other federal courts in declining to disallow invocation or application of a forum selection clause by non-parties to the agreement. Lipcon, 148 F.3d at 1290-91; Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209-10 (7th Cir. 1993) ("In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound."); Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 n.5 (9th Cir. 1988)("We agree with the district court that the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants."); Brock v. Entre Computer Ctrs, Inc., 740 F. Supp. 428, 431 (E.D. Tex. 1990) ("The court finds that the forum selection clause applies to all parties to the contract, whether signatories or not.").

The Eleventh Circuit has defined the inquiry as to whether the litigant in question is "closely related' to the dispute such that it becomes "foreseeable" that it will be bound by the contractual selection of a litigation forum. Lipcon, 148 F. 3d at 1299. If so, then the party is deemed to fall within the "range of transaction participants, parties and nonparties, [that] should benefit from and

15

be subject to forum selection clauses." Id.; Vickers v. Wells, 2006 U.S. Dist. LEXIS 2692 (N.D. Ga. Jan. 10, 2006) (The defendant, as president of company, was plainly entitled to enjoy benefits of the forum selection clause contained in the plaintiff's agreement with the company).

In the case at hand, the evidence is undisputed that Newell serves as president of TSC, that he executed the contracts on behalf of TSC, and that Plaintiff's claims against him arise out of the same facts as Plaintiff's claims against TSC. Accordingly, the undersigned finds that he is "closely related" to the dispute and is entitled to invoke the forum selection clause. As a result, based on the Court's previous finding that the forum selection clause is valid and should be enforced, the undersigned recommends that Plaintiff's claims against Newell be transferred to the federal court in El Paso, Texas.

## III. Conclusion

For the reasons discussed herein, the undersigned RECOMMENDS that Defendant TSC's Motion be denied to the extent its seeks dismissal of this action, but be granted with respect to its request to transfer this action. Additionally, the undersigned RECOMMENDS that Defendant Newell's Motion be denied to the extent he seeks dismissal of this action, but be granted with respect to his request to transfer this action.

The attached sheet contains important information regarding objections to this Report and Recommendation.

DONE this the **25th** day of **March, 2009.**

                                        **/s/ Sonja F. Bivins**
                                **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.  **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

    A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are

18

adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.